UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| STEPHEN BUSHANSKY,<br><br>           Plaintiff,<br><br>v.<br><br>DIPLOMAT PHARMACY, INC., BRIAN GRIFFIN, PHILIP R. HAGERMAN, BENJAMIN WOLIN, REGINA BENJAMIN, DAVID C. DREYER, KENNETH KLEPPER, and SHAWN C. TOMASELLO,<br><br>           Defendants. | Case No._____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Diplomat Pharmacy, Inc. ("Diplomat" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9") and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to

which Diplomat will be acquired by UnitedHealth Group Incorporated ("UnitedHealth" or "Parent"), through Parent's direct wholly-owned subsidiary Denali Merger Sub, Inc. ("Purchaser") (the "Proposed Transaction"). Upon consummation of the Proposed Transaction, Diplomat will be combined with OptumRx, the pharmacy care services business of Optum and part of UnitedHealth.

2. On December 9, 2019, Diplomat and Optum issued a joint press release announcing the Agreement and Plan of Merger (the "Merger Agreement") dated December 9, 2019 to sell Diplomat to UnitedHealth. Under the terms of the Merger Agreement, UnitedHealth will acquire all outstanding shares of Diplomat for $4.00 in cash per share of Diplomat common stock (the "Offer Price"). Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on January 9, 2019. The Tender Offer is scheduled to expire at 12:01 a.m., New York City time, on February 7, 2020, the twenty-first business day following commencement of the Tender Offer.

3. On January 9, 2020, Diplomat filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement, which recommends that Diplomat stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Foros Securities LLC ("Foros"); (ii) the background of the Proposed Transaction; and (iii) Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act.

4. In short, the Proposed Transaction will unlawfully divest Diplomat's public stockholders of the Company's valuable assets without fully disclosing all material information

concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.  This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Diplomat is incorporated in Michigan and headquartered in this District, rendering venue in this District appropriate. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.  Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Diplomat.

9.  Defendant Diplomat is a Michigan corporation with its principal executive offices located at 4100 S. Saginaw Street, Flint, Michigan 48507. Diplomat, through its specialty

pharmacy and infusion services, helps people with complex and chronic health conditions in all 50 states and Washington, D.C., partnering with payers, providers, hospitals, manufacturers, and more. Diplomat's common stock is traded on the New York Stock Exchange under the ticker symbol "DPLO."

10. Defendant Brian Griffin ("Griffin") has been Chairman of the Board and the Company's Chief Executive Officer ("CEO") and a director since June 2018.

11. Defendant Philip R. Hagerman ("Hagerman") has been the Chairman Emeritus since January 2018 and previously served as the Company's CEO, a director and Chairman of the Board since 1991.

12. Defendant Benjamin Wolin ("Wolin") has been a director of the Company since 2015 and was appointed Independent Lead Director effective June 4, 2018, having previously served in this role from February 2017 to January 2018.

13. Defendant Regina Benjamin ("Benjamin") has been a director of the Company since April 7, 2017.

14. Defendant David C. Dreyer ("Dreyer") has been a director of the Company since September 15, 2014.

15. Defendant Kenneth Klepper ("Klepper") has been a director of the Company since December 16, 2014.

16. Defendant Shawn C. Tomasello ("Tomasello") has been a director of the Company since October 6, 2015.

17. Defendants identified in paragraphs 10 to 16 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18. UnitedHealth is a diversified health care company. UnitedHealth offers a broad spectrum of products and services through two distinct platforms: UnitedHealthcare, which provides health care coverage and benefits services; and Optum, which provides information and technology-enabled health services. UnitedHealth trades on the New York Stock Exchange under the ticker symbol "UNH."

19. OptumRx is an innovative pharmacy care services company managing the prescription drug benefits of commercial, Medicare, Medicaid and other government health plans, as well as those of employers and unions through a national network of 67,000 community pharmacies. OptumRx is part of Optum, a leading information and technology-enabled health services business with more than 135,000 people worldwide dedicated to making the health system work better for everyone. Optum is part of UnitedHealth Group.

20. Optum is UnitedHealth's platform for providing information and technology-enabled health services.

21. Purchaser is a Michigan corporation and a direct wholly owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

22. Diplomat is the largest independent provider of specialty pharmacy and infusion services in the U.S. Diplomat offers a broad range of innovative solutions to address the dispensing, delivery, dosing and reimbursement of clinically intensive, high-cost specialty drugs, and a wide range of applications and pharmacy benefit management ("PBM") services designed to help its customers reduce the cost and manage the complexity of their prescription drug programs.

23. Diplomat's revenues are derived from: (i) customized care management programs delivered to its patients, surrounding the dispensing of their specialty medications; and (ii) PBM services provided to its customers.

24. Diplomat's specialty pharmacy services focus on offering specialty drugs that are typically administered on a recurring basis to treat patients with complex chronic diseases that require specialized handling and administration as part of their distribution process. Since entering the PBM market in the fourth quarter of 2017 through the acquisition of two PBM providers, Diplomat now offers a full array of payer-centric PBM services that seek to deliver cost-containment strategies that help payers handle rising pharmacy cost.

**The Proposed Transaction**

25. On December 9, 2019, Diplomat and Optum issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> EDEN PRAIRIE, Minn. and FLINT, Mich. (December 9, 2019) – OptumRx, the pharmacy care services business of Optum, and Diplomat, a provider of specialty pharmacy and infusion services, are combining. The agreement calls for the acquisition of Diplomat's outstanding common stock for $4.00 per share through a cash tender offer and assumption of outstanding debt.
>
> Diplomat brings expertise in managing specialty medications that treat patients with complex diseases, such as oncology and immunology, and provides specialized infusion therapies offered in convenient and clinically appropriate settings in all 50 states and Washington, D.C. The combination will support improved health outcomes and reduced prescription drug costs while helping lower the overall total cost of care.
>
> "With its focus in specialty and infusion services, Diplomat has a proven track record of solving the unique challenges facing patients with complex health care needs," said John Prince, chief executive officer of OptumRx. "This combination will expand the innovative specialty pharmacy and infusion solutions OptumRx can offer to the consumers and clients we serve, helping ensure people get the right medications and services at the right time, in the right setting."
>
> The transaction was unanimously approved by the Board of Directors of Diplomat.

"Our Board of Directors carefully considered a variety of strategic options and concluded that joining OptumRx is in the best interests of our shareholders, employees and the clients and patients we serve," said Brian Griffin, chairman and chief executive officer of Diplomat.

"Since co-founding the company in 1975 with my father, I have had the honor of helping to transform Diplomat into a specialty pharmacy services leader," said Diplomat co-founder and chairman emeritus Philip R. Hagerman, RPh. "This combination will create significant value for Diplomat's specialty pharmacy consumers and clients, and I look forward to the combined companies' future success."

Mr. Hagerman and certain persons and entities affiliated with Mr. Hagerman own approximately 23% of the outstanding common stock of Diplomat, and have agreed to tender their shares in connection with the offer.

**The Recommendation Statement Contains Material Misstatements or Omissions**

28.  The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Diplomat's stockholders. The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in the Proposed Transaction.

29.  Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Foros; (ii) the background of the Proposed Transaction; and (iii) Company insiders' potential conflicts of interest.

*Material Omissions Concerning Foros' Financial Analyses*

30.  The Recommendation Statement describes Foros' fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Foros' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Diplomat's public stockholders are unable to fully

7

understand these analyses and, thus, are unable to determine what weight, if any, to place on Foros' fairness opinion in determining whether to tender their shares in the Proposed Transaction.

31. With respect to Foros' *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the adjusted unlevered free cash flows of the Company during the terminal period; (ii) the terminal value of the Company; (iii) quantification of the inputs and assumptions underlying the discount rate of 10.5%; and (iv) the implied terminal multiples resulting from the analysis.

32. With respect to Foros' *Historical Trading Multiples Analysis*, the Recommendation Statement fails to disclose the Company's next twelve months Adjusted EBITDA and share based compensation, utilized by Foros in its analysis.

33. The omission of this information renders the statements in the "Opinion of Foros Securities LLC" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

34. The Recommendation Statement omits material information regarding the background process leading to the Proposed Transaction.

35. The Recommendation Statement sets forth:

> On April 29, 2019, the Board held a telephonic meeting . . . [and] directed Company management and Foros to contact a broad range of potential counterparties and allow the opportunity for those parties to make proposals with respect to a broad range of strategic alternatives in order to allow the Board to evaluate as many strategic alternatives as possible . . . Over the next two months, representatives of Foros and members of Company management had contact with 34 potential counterparties, including 17 potential strategic buyers and 17 financial sponsors, and Foros provided interested parties with a form of confidentiality agreement (or extension to a confidentiality agreement that had been executed with the Company in 2018), which was substantially similar to the form used in 2018. Following negotiations of such confidentiality agreements, 28 of those potential counterparties executed confidentiality agreements with the Company (or extensions thereof with

respect to confidentiality agreements that had been executed with the Company in 2018).

Recommendation Statement at 20. Yet, the Recommendation Statement fails to disclose whether the form of confidentiality agreement, or extension of the 2018 confidentiality agreement, executed by 28 potential counterparties throughout 2019, includes "don't-ask, don't-waive" standstill provisions that are presently precluding any of these potential counterparties from submitting a topping bid for the Company.

36. The disclosure of the terms of these non-disclosure agreements is crucial to Diplomat stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

37. The omission of this information renders the statements in the "Background of the Transactions" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Company Insiders' Potential Conflicts of Interest*

38. The Recommendation Statement omits material information regarding Company insiders' potential conflicts of interest.

39. The Recommendation Statement fails to disclose the specific details of any employment and retention-related discussions and negotiations that occurred between Diplomat executive officers and OptumRx, Optum or UnitedHealth, including who participated in all such communications, when they occurred and their content. The Recommendation Statement further fails to disclose whether any of Parent's proposals mentioned management retention.

40. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of

management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

41. The omission of this information renders the statements in the "Background of the Transactions" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

42. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other Diplomat stockholders will be unable to make an informed decision whether tender their shares in the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(d) of the Exchange Act and SEC Rule 14d-9

26. Plaintiff repeats all previous allegations as if set forth in full.

27. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Diplomat stockholders to tender their shares in the Tender Offer.

28. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

29. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

30. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

31. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of Diplomat, who will be deprived of their right to make an informed decision whether to tender their shares if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

32. Plaintiff repeats all previous allegations as if set forth in full.

33. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

34. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer.

35. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

## COUNT III

### Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

36. Plaintiff repeats all previous allegations as if set forth in full.

37. The Individual Defendants acted as controlling persons of Diplomat within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Diplomat and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

38. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

39. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

40. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

41. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

42. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Diplomat, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 15, 2020        **WEISSLAW LLP**

        /s/ Richard A. Acocelli
        Richard A. Acocelli
        1500 Broadway, 16th Floor
        New York, New York 10036
        Tel: (212) 682-3025
        Fax: (212) 682-3010
        Email:racocelli@weisslawllp.com

        *Attorneys for Plaintiff*